UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| TRACY JONES, On Behalf of Himself and All Others Similarly Situated, ) ) ) | No. 1:09-cv-01538 **(Consolidated)** |
| Plaintiff, ) ) | CLASS ACTION |
| vs. ) ) | Judge Elaine E. Bucklo |
| CORUS BANKSHARES, INC., et al., ) ) | |
| Defendants. ) ) ) | |

LEAD COUNSEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    AWARD OF ATTORNEYS' FEES.......................................................................... 3

    A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
          Approach to Awarding Attorneys' Fees in Common Fund Cases ......................... 3

    B.    The Requested Fee Is Reasonable and Appropriate as a Percentage of the
          Common Fund ..................................................................................................... 6

          1.    The 19.5% Attorneys' Fee Request Is Entirely Consistent with
               Seventh Circuit Authority and Authority Nationwide................................. 6

          2.    Lead Counsel Provided the Settlement Class with Quality Legal
               Services that Produced Excellent Benefits for the Settlement Class........... 8

          3.    The Requested Attorneys' Fees Are Fair and Reasonable in Light
               of the Contingent Fee Nature of the Representation ................................... 9

          4.    The Reaction of the Class Supports the Requested Award ....................... 12

          5.    Important Public Policy Considerations Also Support the
               Requested Fee Award................................................................................. 12

III.   LEAD PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND
     WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
     OBTAINED........................................................................................................... 13

    A.    The Award Sought by Lead Plaintiff is Reasonable and Should Be
          Approved ........................................................................................................... 13

IV.   CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.,*
572 F.3d 221 (5th Cir. 2009) ............................................................................2

*Arenson v. Bd. of Trade,*
372 F. Supp. 1349 (N.D. Ill. 1974) ....................................................................9

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) ..........................................................................................12

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985) ......................................................................................3, 12

*Berger v. Xerox Corp. Ret. Income Guar. Plan,*
No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819 (S.D. Ill. Jan. 22, 2004) ...............6

*Blum v. Stenson,*
465 U.S. 886 (1984) .......................................................................................4, 5

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ..........................................................................................3

*Brown v. Phillips Petroleum Co.,*
838 F.2d 451 (10th Cir. 1988) ...........................................................................5

*Bryant v. Avado Brands, Inc.,*
100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on other grounds sub nom.*
*Bryant v. Dupree,* 252 F.3d 1161 (11th Cir. 2001) ...........................................10

*Camden I Condo Ass'n v. Dunkle,*
946 F.2d 768 (11th Cir. 1991) ...........................................................................5

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) ..........................................................................14

*Cooper v. IBM Pers. Pension Plan,*
2005 U.S. Dist. LEXIS 17071 (S.D. Ill. Aug. 16, 2005) .....................................6

*Edmonds v. United States,*
658 F. Supp. 1126 (D.S.C. 1987) .......................................................................8

*First Interstate Bank of Nevada, N.A. v. Nat'l Republic Bank of Chicago, et al.,*
No. 80 C 6401, slip op. (N.D. Ill. Feb. 12, 1988) ...............................................6

639336_1

**Page**

*Gaskill v. Gordon,*
  160 F.3d 361 (7th Cir. 1998) ..................................................................................6

*Gaskill v. Gordon,*
  942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) ....................5

*Gottlieb v. Barry,*
  43 F.3d 474 (10th Cir. 1994) .................................................................................5

*Great Neck Capital Appreciation Inv. P'ship, L.L.P. v. PricewaterhouseCoopers, L.L.P.,*
  212 F.R.D. 400 (E.D. Wis. 2002) ..........................................................................4

*Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc., et al.,*
  No. 04 C 1107, slip op. (N.D. Ill. July 24, 2006) ...................................................6

*Harman v. Lyphomed, Inc.,*
  945 F.2d 969 (7th Cir. 1991) .................................................................................5

*Herman & MacLean v. Huddleston,*
  459 U.S. 375 (1983) ...........................................................................................12

*In re Caremark Int'l, Inc. Sec. Litig.,*
  No. 94 C 4751, slip op. (N.D. Ill. Dec. 15, 1997) ..................................................7

*In re Charter Commc'ns, Inc., Sec. Litig.,*
  No. 1506, 2005 WL 4045741 (E.D. Mo. June 30, 2005) .......................................15

*In re Cont'l Ill. Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992) ..........................................................................4, 7, 13

*In re Equity Funding Corp. Sec. Litig.,*
  438 F. Supp. 1303 (C.D. Cal. 1977) ......................................................................9

*In re First Merchants Acceptance Corp. Sec. Litig.,*
  No. 97 C 2715, slip op. (N.D. Ill. Apr. 21, 2000) ..................................................7

*In re Ikon Office Solutions, Inc.,*
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................9

*In re JDS Uniphase Corp. Sec. Litig.,*
  No. C 02-1486 CW(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .............11

*In re King Res. Co. Sec. Litig.,*
  420 F. Supp. 610 (D. Colo. 1976) .........................................................................9

639336_1

**Page**

*In re Nanophase Techs. Corp. Sec. Litig.*,
  No. 98 C 3450, slip op. (N.D. Ill. Mar. 27, 2001) ..................................................................7

*In re Nuveen Fund Litig.*,
  No. 94 C 360, slip op. (N.D. Ill. June 3, 1997)........................................................................7

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
  No. 888, 1994 U.S. Dist. LEXIS 6621 (E.D. La. May 18, 1994)..................................7, 10, 12

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993) ................................................................................................7

*In re Soybean Futures Litig.*,
  No. 89 C 7009, slip op. (N.D. Ill. Nov. 27, 1996)....................................................................7

*In re Spyglass, Inc. Sec. Litig.*,
  No. 99 C 0512, slip op. (N.D. Ill. May 23, 2000)....................................................................7

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) .......................................................................................4, 5, 13

*In re Synthroid Mktg. Litig.*,
  325 F.3d 974 (7th Cir. 2003) ....................................................................................................4

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................................................4

*In re Xcel Energy, Inc.*,
  364 F. Supp. 2d 980 (D. Minn. 2005)......................................................................................11

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ..................................................................................................................3

*Kaufman v. Motorola, Inc., et al.*,
  No. 95-CV-1069, slip op. (N.D. Ill. May 24, 2001) ................................................................7

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ............................................................................................4, 5, 7

*Liebhard v. Square D Co., et al.*,
  No. 91 C 1103, slip op. (N.D. Ill. June 15, 1993)....................................................................7

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ..................................................................................................................3

639336_1

**Page**

*Phemister v. Harcourt Brace Jovanovich, Inc.,*
   No. 77 C 39, 1984 WL 21981 (N.D. Ill. Sept. 14, 1984) ........................................................7

*Roth v. Aon Corp., et al.,*
   No. 04-C-6835, slip op. (N.D. Ill. Nov. 18, 2009) ...................................................6

*Swedish Hosp. Corp. v. Shalala,*
   1 F.3d 1261 (D.C. Cir. 1993).............................................................................5

*Taubenfeld v. Aon Corp.,*
   415 F.3d 597 (7th Cir. 2005) .....................................................................5, 6, 8

*Trustees v. Greenough,*
   105 U.S. 527 (1882) ..............................................................................3

*Varljen v. H.J. Meyers & Co.,*
   No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS
   16205 (S.D.N.Y. Nov. 8, 2000)...........................................................14

*Weiner v. The Quaker Oats Co.,*
   No. 98 C 3123 (RP), slip op. (N.D. Ill. Sept. 14, 2001) ...........................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4...............................................................................................*passim*
   §78u-4(a)(4)...........................................................................................13
   §78u-4(a)(6)............................................................................................5

**SECONDARY AUTHORITIES**

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar,
*Recent Trends IV: What Explains Filings and Settlements in Shareholder
Class Actions?* (NERA Nov. 1996) ..........................................................8

Dr. Jordan Milev, Robert Patton, and Svetlana Starykh, *Trends 2010 Year-End
Update: Securities Class Action Filings Accelerate in the Second Half
of 2010; Median Settlement Value at an All-Time High* (NERA Dec. 2010) ........................8

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,*
   108 F.R.D. 237 (Oct. 8, 1985)............................................................5

- v -

**Page**

## LEGISLATIVE HISTORY

H.R. Conf. Rep. 104-369, 1995 U.S.C.C.A.N. 730, 1995 WL 709276 (1995)..............................14

S. Rep. 104-98, 1995 U.S.C.C.A.N. 679, 1995 WL 372783 (1995) .......................................14, 15

## I.     INTRODUCTION

Lead Counsel have achieved a Settlement Fund consisting of $10,000,000 plus interest earned for the benefit of the Class.[1] The settlement of this litigation is a highly favorable result and was achieved through the skill, tenacity, and effective advocacy of Lead Counsel. As compensation for their efforts in achieving this result, Lead Counsel seek an award of attorneys' fees of 19.5% of the Settlement Fund, plus expenses incurred in the prosecution of the litigation in the amount of $200,000, plus interest at the same rate and for the same period as that earned by the Settlement Fund on both amounts.

The requested fee is below the range of percentages normally awarded in class actions in this Circuit, as well as numerous decisions throughout the country, and is the appropriate method of compensating counsel. The amount requested is especially warranted in the light of the recovery obtained for the Class, the contingent nature of counsel's representation, the extensive efforts of counsel in obtaining this highly favorable result under difficult circumstances, and the significant obstacles presented in the prosecution and settlement of the litigation against defendants.[2] The litigation was prosecuted under the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and, therefore, was extremely risky and difficult from the outset. The effect of the PSLRA is to make it harder for investors to bring and successfully conclude securities class actions. As retired Supreme Court Justice Sandra Day O'Conner recognized: "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by

---

[1]     All capitalized terms used herein have the meanings assigned to them in the Stipulation of Settlement dated as of May 3, 2011.

[2]     The efforts of counsel in achieving this settlement are set forth in greater detail in the accompanying Declaration of John J. Rice in Support of (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Award of Attorneys' Fees and Expenses (the "Rice Declaration").

judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Lead Counsel undertook representation of the Class on a contingent fee basis and no payment has been made to date for their services or the litigation expenses they have incurred on behalf of the Class. Lead Counsel firmly believe that the settlement obtained is the result of the creative and diligent efforts of counsel as well as their reputations as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. In a case asserting claims based on complex legal and factual issues which were opposed by highly skilled and experienced defense counsel, Lead Counsel succeeded in securing a highly favorable result for the Class under difficult and challenging circumstances. The requested fee has also been approved by the Court-appointed Lead Plaintiff, Todd L. Johnson, who had a significant financial stake in the Litigation, something envisioned by Congress when it enacted the PSLRA. *See* 15 U.S.C. §78u-4. Congress believed that court-appointed lead plaintiffs, who have a financial stake in the outcome of the case, would be in a better position to select counsel and to assess the reasonableness of the attorneys' fees.

For all the reasons set forth herein, in the Rice Declaration, and in the settlement brief, Lead Counsel respectfully submit that the requested attorneys' fees are fair and reasonable under the applicable legal standards and, therefore, should be awarded by the Court. Moreover, the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of the Litigation and, therefore, should be approved. Finally, the expense award requested by Lead Plaintiff reflecting compensation for his efforts and expense in representing the Class is reasonable and should be awarded.

## II.  AWARD OF ATTORNEYS' FEES

### A.  A Reasonable Percentage of the Fund Recovered Is the Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seek as attorneys' fees a reasonable percentage of the fund recovered for the Class.  In recent years, the percentage-of-recovery method has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.  A percentage fee is desirable because it most fairly correlates the compensation of counsel to the benefit conferred upon the class.

Both the Supreme Court and the Seventh Circuit have long recognized that attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services from the settlement fund.  Under this "equitable" or "common fund" doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527, 528 (1882), attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work.  *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

Courts have also recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.  Indeed, the Supreme Court has emphasized that private securities actions provide a "'most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

The Court of Appeals for the Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market

- 3 -

price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). *See also In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services.").[3]

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." Although the Seventh Circuit has stated that "the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court," it has also recognized that there are advantages to the percentage-of-the-recovery method, including its relative objectivity and ease of its application. *See Great Neck Capital Appreciation Inv. P'ship, L.L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 411 (E.D. Wis. 2002).[4] The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains

---

[3]     *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible.").

[4]     As the court stated in *Union Carbide*, the percentage method is "bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989).

only to the extent his client gains." *Id.* at 325.[5]  Indeed, the Seventh Circuit has endorsed the percentage-of-the-fund method when awarding attorneys' fees from a common fund. *See Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (Williams, J.) (stating "the percentage of the fund method provides a more effective way of determining whether the hours expended were reasonable"), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991); *Synthroid Mktg.*, 264 F.3d at 718.  Likewise, supporting authority for the percentage method in federal courts throughout the United States is overwhelming.[6]

In *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." . . . Although is it [sic] impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante,* courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions.

*Id.* at 599.  In affirming an award of fees equaling 30% of a $7.5 million settlement fund the court considered, *inter alia*, the following factors: (1) "awards made by courts in other class actions"

---

[5]  The PSLRA also supports the use of the percentage-of-the-recovery method. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

[6]  Throughout the United States, courts favor the percentage-of-recovery approach for the award of attorneys' fees in common fund cases. Two circuits have ruled that the percentage method is mandatory in common fund cases. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). Like the Seventh Circuit, other circuits and commentators have expressly approved the use of the percentage method. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of *Blum* recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in common fund cases); Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

which "amount[ed] to 30-39% of the settlement fund;" (2) "the quality of legal services rendered;" and (3) "the contingent nature of the case." *Taubenfeld*, 415 F.3d at 600.

As discussed below, an analysis of the applicable standards supports the requested award.

**B.    The Requested Fee Is Reasonable and Appropriate as a Percentage of the Common Fund**

**1.    The 19.5% Attorneys' Fee Request Is Entirely Consistent with Seventh Circuit Authority and Authority Nationwide**

The Seventh Circuit, in *Taubenfeld* affirmed the district court's approval of a 30% fee of a $7.5 million securities class action settlement recognizing that "awards made by courts in other class actions . . . amount[ed] to 30-39% of the settlement fund." *Taubenfeld*, 415 F.3d at 600. In *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998), a class action involving a pyramid real-estate investment scheme, the Seventh Circuit affirmed a fee of roughly $8 million, representing 38% of the recovery. The percentage sought here, 19.5% of the $10 million Settlement Fund, is therefore well below percentages affirmed by the Seventh Circuit.

Moreover, district courts in this Circuit have routinely awarded attorneys' fees in excess of the fees sought here. *See, e.g., Roth v. Aon Corp., et al.*, No. 04-C-6835, slip op. (N.D. Ill. Nov. 18, 2009) (31% of $30 million settlement, plus expenses); *Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc., et al.*, No. 04 C 1107, slip op. (N.D. Ill. July 24, 2006) (30% of $7.5 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *6 (S.D. Ill. Jan. 22, 2004) (awarding 29% of $239 million settlement fund, plus expenses, and finding that "an auction for legal services in this litigation would have produced a percentage at or higher than the 29% fee awarded"); *Cooper v. IBM Pers. Pension Plan*, 2005 U.S. Dist. LEXIS 17071, at *15 (S.D. Ill. Aug. 16, 2005) (noting that 30% appears to be "just about the bench mark"); *First Interstate Bank of Nevada, N.A. v. Nat'l Republic Bank of Chicago, et al.*, No. 80 C 6401, slip op. (N.D. Ill. Feb. 12, 1988) (39% of a $3,575,000 settlement, amounting to a $1.4

- 6 -

million fee); *Weiner v. The Quaker Oats Co.*, No. 98 C 3123 (RP), slip op. (N.D. Ill. Sept. 14, 2001) (33-1/3% of settlement, amounting to a $3,366,667 fee); *Kaufman v. Motorola, Inc., et al.*, No. 95-CV-1069, slip op. (N.D. Ill. May 24, 2001) (33-1/3% of settlement, amounting to a $8,333,333 fee).[7]

The Seventh Circuit has stated "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Cont'l Ill.*, 962 F.2d at 572. If this case was an individual litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 33-1/3% to 40% of the recovery. *See Kirchoff*, 786 F.2d at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed on vary, with one-third being particularly common.").[8]

---

[7]    *See also In re Nanophase Techs. Corp. Sec. Litig.*, No. 98 C 3450, slip op. (N.D. Ill. Mar. 27, 2001) (33-1/3% of settlement, amounting to a $1,341,532 fee); *In re First Merchants Acceptance Corp. Sec. Litig.*, No. 97 C 2715, slip op. (N.D. Ill. Apr. 21, 2000) (33-1/3% of settlement, amounting to a $2,895,178 fee); *In re Nuveen Fund Litig.*, No. 94 C 360, slip op. (N.D. Ill. June 3, 1997) (33-1/3% of settlement, amounting to a $8 million fee); *In re Soybean Futures Litig.*, No. 89 C 7009, slip op. (N.D. Ill. Nov. 27, 1996) (33-1/3% of settlement, amounting to a $7,166,666 fee); *Liebhard v. Square D Co., et al.*, No. 91 C 1103, slip op. (N.D. Ill. June 15, 1993) (33-1/3% of settlement, amounting to a $2.5 million fee); *In re Spyglass, Inc. Sec. Litig.*, No. 99 C 0512, slip op. (N.D. Ill. May 23, 2000) (33% of settlement, amounting to a $511,500 fee); *In re Caremark Int'l, Inc. Sec. Litig.*, No. 94 C 4751, slip op. (N.D. Ill. Dec. 15, 1997) (fee award of 33% of settlement fund).

[8]    *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 U.S. Dist. LEXIS 6621, at *4 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); *In re Shell Oil Refinery*, 155 F.R.D. 552, 571 (E.D. La. 1993) ("The customary contingency fee is between 33 1/3% and 40%.").

In addition, the requested fee is below the average of fee awards in a study of securities class actions conducted by National Economic Research Associates ("NERA") which found: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996). Specifically, NERA examined 433 settlements and out of the 433 settlements, 18 were in the Seventh Circuit. The average attorneys' fees as a percentage of the settlements in this Circuit was 31.83%. *Id.* at Table 12b. A more recent study conducted by NERA found that in securities cases that settled during years 1996-2010 and for proceeds of between $10 million and $25 million, the median award of attorneys' fees was 30% of the settlement proceeds. *See* Dr. Jordan Milev, Robert Patton, and Svetlana Starykh, *Trends 2010 Year-End Update: Securities Class Action Filings Accelerate in the Second Half of 2010; Median Settlement Value at an All-Time High,* at 22, Figure 20 (NERA Dec. 2010).

### 2. Lead Counsel Provided the Settlement Class with Quality Legal Services that Produced Excellent Benefits for the Settlement Class

In evaluating counsel's fee request, the Seventh Circuit held that courts may consider the "quality of legal services rendered." *Taubenfeld*, 415 F.3d at 600. As the court recognized in *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), "prosecution and management of a complex national class action requires unique legal skills and abilities." Those skills were called upon here. From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Class. This case required a determined investigation, extensive litigation efforts and the skill to respond to a host of legal and factual defenses raised by Defendants. As a result of Lead Counsel's diligent efforts on behalf of the Class and their skill and expertise, Lead Counsel were able to negotiate a very favorable result for the Class. The quality of Lead Counsel's work on this

- 8 -

case was excellent and is ultimately reflected in the result.[9] Lead Counsel's reputations as attorneys who will zealously carry a meritorious case through trial and appellate levels as well as their demonstrable ability to vigorously develop the evidence in this Litigation enabled them to negotiate the highly favorable recovery for the benefit of the Class.

The quality of opposing counsel is also important in evaluating the quality of the work done by plaintiffs' counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Lead Plaintiff was opposed in this Litigation by very skilled and highly respected counsel from Mayer Brown LLP, and Stetler, Duffy & Rotert, Ltd., firms with well-deserved reputations for vigorous advocacy in the defense of complex civil cases. In the face of this formidable opposition, Lead Counsel were able to develop their case so as to persuade Defendants to settle the Litigation on terms highly favorable to the Class.

### 3. The Requested Attorneys' Fees Are Fair and Reasonable in Light of the Contingent Fee Nature of the Representation

Lead Counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are paid an hourly rate and paid for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expense since this case began. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of

---

[9]    *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("The most significant factor in this case is the quality of representation, as measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'") (citation omitted).

639336_1

attorneys' fees. For example, in awarding counsel's attorneys' fees in *Prudential-Bache*, 1994 U.S. Dist. LEXIS 6621, at *16, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. Indeed, the risk of no recovery in complex cases of this type is very real and is heightened when counsel, as they did here, press to achieve the very best result for those that they represent. A study of securities class actions filed after the passage of the PSLRA between 1996 and 2010, found that 43% of the cases filed were dismissed in defendants' favor. *See Securities Class Action Filings: 2010 Year in Review* (Cornerstone Research 2011). As one court has noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

Even after Lead Plaintiff successfully opposed (in the main) Defendants' motion to dismiss, Lead Plaintiff still faced significant obstacles. Defendants steadfastly maintained that they did nothing wrong and, likely would offer evidence and the testimony of expert witnesses to support their positions. Assuming Lead Plaintiff was able to overcome Defendants' motions for summary judgment after extensive and costly discovery, and prove liability at trial, they still would have faced significant risks in proving loss causation and damages. Because of the complex nature of establishing damages, expert testimony is almost always necessary to establish the amount – and indeed the existence – of actual damages. Here, the damage assessments of the parties' respective

- 10 -

experts who would testify at trial would likely be polar opposites and the determination of the amount, if any, of damages suffered by the Class at trial would have turned into a "battle of the experts."

There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, have received no compensation. Lead Counsel are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of members of the plaintiffs' bar produced no fee for counsel. For example, in a case against JDS Uniphase Corporation, after a lengthy trial involving securities claims, the jury reached a verdict in defendants' favor. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a successful result would be realized only after considerable and difficult effort. Lead Counsel committed significant resources of both time and money to the vigorous and successful prosecution of the Litigation for the benefit of the Class. Few law firms could have devoted this kind of time and financial resources to this Litigation. In view of the skill of Defendants' counsel and the legal and factual difficulties of the Litigation, the risk of never being compensated was real. The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 4.    The Reaction of the Class Supports the Requested Award

Pursuant to this Court's Order Preliminary Approving Settlement and Providing for Notice, more than 23,700, Notices have been mailed to potential Class Members. Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees of 19.5% of the Settlement Fund, plus expenses not to exceed $200,000, and an award to Lead Plaintiff of not more than $30,000. Class Members were also advised of their right to object to Lead Counsel's fee and expense request, or the award to Lead Plaintiff. While the date to file objections has not yet passed, to date, not a single objection to any aspect of the settlement, including the fee and expense request has been received.

### 5.    Important Public Policy Considerations Also Support the Requested Fee Award

The federal securities laws are remedial in nature and, in order to effectuate their purpose of protecting investors, private lawsuits are to be encouraged. *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Bateman Eichler*, 472 U.S. 299; *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). Indeed, the ultimate effectiveness of these remedies may largely depend on the efficacy of the class action device. As one court has noted:

> In complex securities class actions and shareholder derivative litigation, able counsel for plaintiffs can be retained only on a contingent basis. A large segment of the investing public would be denied a remedy for violations of the securities laws and breaches of fiduciary duty by public companies and those entrusted with their stewardship if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken and the delay before any compensation is received. Filing of contingent lawsuits in this connection should not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts.

*Prudential-Bache*, 1994 U.S. Dist. LEXIS 6621, at *20-*21.

This view has also been endorsed by former Chief Justice William H. Rehnquist:

639336_1

> Full civil justice reform will not likely be accomplished until we rethink the manner
> in which litigation is paid for in this country, and until better incentives exist to
> reward lawyers for early resolution of controversies and efficient handling of cases,
> instead of providing a disincentive, as the present hourly rate often does.

Remarks of the Chief Justice for the Distinguished Citizen Award, at 10 (Feb. 5, 1994).

Private attorneys should be encouraged to take the risks required to represent those who

would not otherwise be protected from securities fraud. Accordingly, an award of the fee requested

herein would be fully consistent with important public policy considerations.

**III.     LEAD PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND
            WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
            OBTAINED**

Lead Plaintiff's counsel also request payment of expenses incurred in connection with the

prosecution of this Litigation. Lead Plaintiff's counsel are requesting payment of expenses in the

aggregate amount of $200,000 that were incurred in prosecuting the Litigation.[10] These expenses are

set forth in the accompanying declarations of Robbins Geller Rudman & Dowd LLP and Miller Law

LLC. In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit

of a class are also entitled to payment of reasonable litigation expenses and costs from the fund.

*Synthroid*, 264 F.3d at 722; *Cont'l Ill.*, 962 F.2d at 570. The expenses requested are reasonable costs

for purposes of prosecuting the Litigation and thus should be paid from the Settlement Fund.

**A.       The Award Sought by Lead Plaintiff is Reasonable and Should Be
            Approved**

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost

wages) directly relating to the representation of the class to any representative party serving on

behalf of a class." *See* 15 U.S.C. §78u-4(a)(4). Here, over the course of the Litigation, Lead

Plaintiff expended 100 hours and incurred $756.60 in expenses to fulfill his duties as representative

---

[10]     Lead Plaintiff's counsel are only requesting $200,000 of the $346,675.12 in total expenses incurred.

639336_1

of, and fiduciary for, the Class. Lead Plaintiff requests payment of $25,756.60. Reimbursement of such costs and expenses should be allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.*, No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205, at *14 n.2 (S.D.N.Y. Nov. 8, 2000). Congress, in fact, intended to grant courts discretion to approve awards in appropriate cases. *See* H.R. Conf. Rep. 104-369, 1995 U.S.C.C.A.N. 730, 1995 WL 709276, at *35 (1995) ("[L]ead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and [the committee] grants the courts discretion to award fees accordingly."); S. Rep. 104-98, 1995 U.S.C.C.A.N. 679, 1995 WL 372783, at 10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement for 'reasonable costs and expenses' (including lost wages) directly relating to representation of the class."). The Seventh Circuit has recognized that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving an award of $25,000 to class representative).

Here, Lead Plaintiff worked closely with Lead Counsel and actively participated in the prosecution of this case. *See* paragraph 6 to the accompanying Declaration of Todd Johnson. Lead Plaintiff selected Lead Counsel after considering several other firms, regularly conferred with counsel, reviewed case filings, provided input regarding litigation and settlement strategy, monitored settlement proceedings, and attended the December 2010 mediation in Chicago. *Id.* In total, Lead Plaintiff spent 100 hours representing the interest of the Class in the Litigation. The considerable time and energy Lead Plaintiff spent in pursuit of a fair settlement for the Class was necessarily directed away from his regular business activities. *Id.*, ¶9. In light of Lead Plaintiff's position as Chairman and CEO of RSJ, his substantial experience serving as a fiduciary, his considerable involvement throughout the Litigation, and the benefits obtained for the Class, a reimbursement rate

- 14 -

at $250 per hour for Lead Plaintiff's time is fair and reasonable. *Id.; see In re Charter Commc'ns, Inc., Sec. Litig.*, No. 1506, 2005 WL 4045741, at *25 (E.D. Mo. June 30, 2005) (awarding lead plaintiff $300 per hour based on his compensation as an investment manager and for his substantial services to the class and noting that courts "routinely approve" such reimbursements in PSLRA actions). Lead Plaintiff also respectfully requests reimbursement for necessary travel expenses incurred in the amount of $756.60 in attending the December 2010 mediation in Chicago. Johnson Decl., ¶9.

Accordingly, Lead Plaintiff's request is reasonable and he is deserving of the requested amount.

## IV.     CONCLUSION

For all the reasons stated herein, we submit that the Court should approve the fee and expense application and enter an order awarding Lead Plaintiff's counsel 19.5% of the Settlement Fund, plus payment of $200,000 in expenses, plus the interest earned on both amounts at the same rate and for the same period as that earned on that portion of the Settlement Fund until paid, as well as the expense reimbursement sought by Lead Plaintiff.

DATED: August 9, 2011                    Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         JOHN J. RICE
                                         JEFFREY D. LIGHT
                                         RYAN A. LLORENS
                                         655 West Broadway, Suite 1900
                                         San Diego, CA 92101
                                         Telephone: 619/231-1058
                                         619/231-7423 (fax)


                                                  s/ Jeffrey D. Light
                                         ————————————————————
                                                JEFFREY D. LIGHT

- 15 -

639336_1

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
SARAH R. HOLLOWAY
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

Lead Counsel for Lead Plaintiff

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312/332-3400
312/676-2676 (fax)

Liaison Counsel

639336_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 9, 2011.

s/ Jeffrey D. Light
JEFFREY D. LIGHT

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:jeffl@rgrdlaw.com

639336_1

# Mailing Information for a Case 1:09-cv-01538

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Joseph J. Duffy**
  jduffy@sdrlegal.com,edocket@sdrlegal.com,kmcguire@sdrlegal.com

- **Emily M. Emerson**
  courtnotification@mayerbrown.com,EEmerson@mayerbrown.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **Michael Jon Gill**
  courtnotification@mayerbrown.com

- **Sarah R. Holloway**
  sholloway@rgrdlaw.com

- **Jeffrey D. Light**
  jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ryan A Llorens**
  ryanl@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,JRamirez@millerlawllc.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michele Louise Odorizzi**
  courtnotification@mayerbrown.com,modorizzi@mayerbrown.com

- **David D Pope**
  courtnotification@mayerbrown.com

- **John J. Rice**
  jrice@rgrdlaw.com,hectorm@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Corey B. Rubenstein**
  cruben@sdrlegal.com,edocket@sdrlegal.com,kmcguire@sdrlegal.com

- **John Joseph Tharp , Jr**
  courtnotification@mayerbrown.com,jtharp@mayerbrown.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Pia Fields
'